108 F.3d 337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
H/C COMPANY, a California General Partnership, Plaintiff-Appellant,
v.
ZURICH-AMERICAN INSURANCE COMPANY, an Illinois Corporation,
Defendant-Appellee.
 No. 95-17179.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1997.
Decided Feb. 20, 1997.
 
 Before: SNEED, LEAVY and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael Calhoun and his company, Cal Pacific Land, bought insurance from Zurich-American Insurance Company ("Zurich"), which included a duty to defend in the event of a law suit. Calhoun was sued for both structural and non-structural building defects. Zurich initially undertook defense of the suits, but then withdrew. Calhoun's successor in interest, H/C Company ("H/C"), brought suit in district court, claiming that Zurich had failed to fulfill a duty to defend.
 
 
 3
 On cross-motions for summary judgment, the district court granted judgment in favor of Zurich. H/C appeals. We affirm.
 
 DISCUSSION
 
 4
 We review the grant of a motion for summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1994). Because the parties are fully aware of the facts and arguments raised in this case, we will not repeat them here.
 
 I. The Non-Structural Action
 
 5
 The fact that physical damage was alleged in this suit is conceded. Zurich denied coverage, however, because of the completed operations hazard exclusion.
 
 
 6
 This exclusion operates to exclude coverage for property damage claims occurring after the insured's operations were completed or abandoned. The Hanover Terrace Project which formed the basis of the complaint was completed on November 9, 1983. The alleged property damage in the non-structural action occurred after that date. Accordingly, the completed operations hazard exclusion precludes coverage.
 
 
 7
 The Broad Form Damage Liability endorsement does not alter this. H/C contends that a parenthetical expression after the title constitutes a "classification" pursuant to policy terms which would operate to eliminate the completed operations exclusion. We agree with the district court's analysis that "classification" refers to the insured's business operations. As a matter of underwriting, the insureds' business operations are given "classifications" for the purpose of determining premium rates. "Classification" does not refer to a parenthetical expression contained in the title of the Broad Form Liability Coverage endorsement.
 
 
 8
 H/C also relies on the fact that Zurich's first insurance binder indicated that completed operations coverage would be provided. The first policy excluded completed operations coverage and subsequent policy of insurance also excluded coverage. It is true that in California an insurance company is obligated within ninety days after issuance of a binder to issue an insurance policy containing the same terms and conditions as the binder. Cal.Ins.Code § 382. However, as the district court correctly noted, a binder is a temporary contract with automatically terminates which the policy is issued. Cal.Ins.Code § 382.5. Indeed, the binder in this case confirms the general law in providing that "[t]his binder is canceled when replaced by a policy." Because the binder had no further effect once the policy was issued, we cannot construe it as modifying an insurance contract issued two years later.
 
 
 9
 We also note that each Zurich policy was for a specified term. The policies did not contain automatic renewal clauses. Thus, each policy constituted a new contract between the parties, rather than a continuation of the prior agreement. George J. Couch, Cyclopedia of Insurance Law § 68.43 (2d ed. 1985).
 
 II. The Structural Action
 
 10
 Contrary to H/C's argument, we find that the cost of repair of defective property, even if it affects non-defective property, is not property damage under Ninth Circuit interpretation of California law. See New Hampshire Ins. Co. v. Vieira, 930 F.2d 696 (9th Cir.1991). Nor does the recent California Court of Appeals case, Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co., 45 Cal.App.4th 1 (Cal.Ct.App.1996), change this determination because H/C's situation is factually inapposite to that in Armstrong: while the design damage to the structure is no doubt physically linked with the structure, design damage is not really a "potentially dangerous product" like asbestos. Further, an interpretation that design flaws are property damage would eviscerate the rule that "physical incorporation of a defective product into another does not constitute property damage unless there is physical harm to the whole," which Armstrong did not overturn but instead explicitly distinguished. The inferior materials alleged to have been used, while being closer in nature to a "potentially dangerous product," are not "linked with the building" the way asbestos is.
 
 
 11
 We further reject H/C's argument that Vieira applies only when it is the insureds' own work at issue. Finding in favor of H/C's position would entail the unattractive result that the definition of property damage changes when the insured is not a contractor. Additionally, the public policy concern articulated in Vieira was not the cornerstone of the decision.
 
 CONCLUSION
 
 12
 Having reached these conclusions, it is unnecessary for us to reach the other issues raised by Zurich. The judgment of the district court is affirmed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3